IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ACCO BRANDS USA LLC, *et al.*, <br><br> **Plaintiffs**, <br><br> v. <br><br> PIÑEYRO Y LARA COMERCIAL S.A., *et al.*, <br><br> **Defendants**. | Civil No. 13-1917 (FAB) |

**MEMORANDUM & ORDER**

BESOSA, District Judge

Before the Court is defendant Piñeyro y Lara of Puerto Rico, Inc. ("PyL PR")'s renewed motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). (Docket No. 116.)[1] For the reasons discussed below, the Court **GRANTS** PyL PR's motion to dismiss.

I. Procedural Background

Plaintiff ACCO Brands USA LLC ("ACCO LLC") is a limited liability company organized under the laws of Delaware; its sole member is ACCO Brands Corporation ("ACCO Corporation"), a Delaware corporation with its principal place of business in Lake Zurich,

---

[1] Defendant incorporates its prior motion to dismiss and reply (Docket Nos. 16 & 32) in its renewed motion.

Illinois.  (Docket No. 103-1.)  Plaintiff Tilibra Productos de Papeleria, Ltda. ("Tilibra") is a Brazilian corporation and a subsidiary of ACCO Corporation.  (Docket No. 1 at ¶ 3.)  Plaintiff ACCO Mexicana, S.A. de C.V. ("ACCO Mexicana") is a Mexican entity and a subsidiary of plaintiff ACCO Corporation.  Id. at ¶ 5.

Defendant Piñeyro y Lara Comercial S.A. ("PyL DR") is a Dominican entity with its principal place of business in Santo Domingo, Dominican Republic.  (Docket No. 1 at ¶ 7.)  Defendant PyL PR is a corporation organized under Puerto Rico law, id. at ¶ 8; the parties dispute the location of its principal place of business.

Plaintiffs filed a declaratory judgment action against defendants on December 13, 2013, alleging that the Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(3) ("section 1332(a)(3)).  (Docket No. 1.)  On February 25, 2014, defendant PyL PR moved to dismiss the complaint for lack of subject matter jurisdiction.  (Docket No. 32.)  Defendants filed an answer to the complaint and a counterclaim against plaintiffs on April 14, 2014. (Docket No. 77.)  On April 28, 2014, plaintiffs moved to strike portions of defendants' answer and counterclaim (Docket No. 80), and to dismiss PyL PR's Law 75 counterclaim against them (Docket No. 81).

On June 24, 2014, the Court denied defendant PyL PR's motion to dismiss without prejudice, finding insufficient information to make a determination regarding PyL PR's citizenship. (Docket No. 99.) The Court permitted the parties until August 15, 2014, to conduct jurisdictional discovery and re-file dispositive jurisdictional motions. Id. The parties have since complied (Docket Nos. 113, 116, 131, & 132), and the Court proceeds to analyze the remaining jurisdictional issue.

## II.  Standard

Defendant PyL PR, as a corporation, is "deemed to be a citizen of every State and foreign state by which it has been incorporated <u>and</u> of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c) (emphasis added).  The parties agree that PyL PR is incorporated in Puerto Rico and is a citizen of Puerto Rico for diversity purposes.  The parties dispute, however, the location of PyL PR's principal place of business and whether it has dual citizenship for diversity purposes.  A court determines a corporation's principal place of business by identifying the corporation's "'nerve center,' usually its main headquarters."  <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 93 (2010).  On June 24, 2014, the Court issued a memorandum and order concluding, after a review and interpretation of relevant case law, that for

Civil No. 13-1917 (FAB)                                                    4

diversity jurisdiction to exist pursuant to section 1332(a)(3), there must be a United States Citizen on each side of the dispute, and "[d]iversity must be satisfied by both corporate citizenship designations."  (Docket No. 99 at pp. 6, 8 (internal citations omitted).)  Accordingly, the Court indicated that its jurisdiction would depend on whether the plaintiffs could establish that PyL PR's principal place of business was in the United States.  Id. at p. 9.

Having permitted the parties to conduct additional jurisdictional discovery, the Court now applies the same standard articulated in its prior opinion, cognizant that "[t]he burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it" — here, plaintiffs.  Hertz, 559 U.S. at 96 (internal citations omitted).

**III. Discussion**

Both parties make strong arguments regarding the location of PyL PR's nerve center.  Plaintiffs offer evidence that PyL PR's directors — Messrs. Frank Piñeyro and Alberto Lara — conduct many business activities in Puerto Rico, while defendant PyL PR points to proof that Messrs. Piñeyro and Lara direct the company's business activities from the Dominican Republic.  As detailed below, the Court finds that plaintiffs' evidence ultimately falls

Civil No. 13-1917 (FAB)                                                  5

short of showing that PyL PR's officers "direct, control, and coordinate" the company's activities from Puerto Rico. See Hertz, 559 U.S. at 92.

    **A.   PyL PR's Bylaws and Corporate Filings**

The first paragraph of PyL PR's bylaws states, "The principal place of business of [PyL PR] shall be located in the Commonwealth of Puerto Rico in such place as may be fixed from time to time by the Board of Directors upon filing of such notices as may be required by law." (Docket No. 131-4.) According to plaintiffs, the bylaws are a binding contract requiring PyL PR to maintain its principal place of business in Puerto Rico. (Docket No. 131 at p. 3.) As further indication of PyL PR's nerve center, plaintiffs point out that PyL PR represents to Puerto Rico's Department of Treasury and the State Insurance Fund of Puerto Rico that its address is in Puerto Rico. (Docket Nos. 113-5 & 113-6.) The Supreme Court in Hertz, however, rejected the suggestion "that the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'" Hertz, 559 U.S. at 97. The Supreme Court noted that a corporation's nerve center "should normally" be its headquarters, but only if the headquarters is "the actual

Civil No. 13-1917 (FAB)                                                 6

center of direction, control and coordination, . . . and not simply an office where the corporation holds its board meetings." Id. at 93. Thus, the Court considers the location identified on PyL PR's corporate filings as a factor, but the documents do not end the Court's jurisdictional inquiry.

### B. Piñeyro and Lara's Trips to Puerto Rico

Plaintiffs offer evidence that Messrs. Piñeyro and Lara took numerous business trips to Puerto Rico, during which they made important business decisions. (See generally Docket Nos. 113 & 131.) Specifically, plaintiffs rely on an affidavit by Carlos Murguia, ACCO LLC's international sales and marketing manager and primary point of contact with PyL PR. Murguia details the multiple meetings, trade shows, and store visits he attended in Puerto Rico alongside Messrs. Piñeyro and Lara. (Docket No. 113-15 at ¶¶ 8-12.) Murguia adds that Messrs. Piñeyro and Lara were the only individuals who made important business decisions on PyL PR's behalf, and that "important business decisions were always made anytime Mr. Piñeyro and Mr. Lara were in Puerto Rico." (Docket No. 113-16 at ¶¶ 11, 14.) Murguia does not, however, detail the substance of any business decision that PyL PR's directors made during those trips to Puerto Rico. Plaintiffs also argue that PyL PR's officers traveled to Puerto Rico to meet with clients, attend

Civil No. 13-1917 (FAB)                                                7

audits, conduct employee trainings, and meet with the company's lender.  (Docket No. 113 at p. 2.)

Defendant PyL PR contends that its officers use modern-day technology to manage, direct, and control the company from the Dominican Republic.  (Docket No. 116 at p. 3.)  Thus, PyL PR argues, its officers did not make any significant business decisions during their trips to Puerto Rico, as shown by a log documenting Messrs. Piñeyro and Lara's travel to Puerto Rico. (Docket No. 132-17.)  PyL PR's president, Piñeyro, testified, "every time that we come to Puerto Rico, we come essentially to supervise the sales and distribution activities [of PyL PR]." (Docket No. 113-2 at p. 153.)  Piñeyro added that his meetings with Murguia in which pricing terms and operation were discussed entailed important, but not strategic, business decisions, and that PyL PR's officers have "never had pricing negotiations in Puerto Rico."  (Docket No. 113-2 at pp. 140-45, 153.)  As further support, PyL PR provides numerous email exchanges between its two officers and its clients.  In the emails, Messrs. Piñeyro and Lara communicate decisions regarding product proposals, export logistics, pricing adjustments, manufacturing alternatives to

Civil No. 13-1917 (FAB)                                                 8

reduce costs, marketing approaches, and inventory choices.[2]  (See Docket Nos. 35-1 — 35-18; 36-1 — 36-15; 37-1 — 37-20; 38-1 — 38-13.)  The substance of the emails supports PyL PR's assertion that Messrs. Piñeyro and Lara direct, control and coordinate PyL PR's activities remotely.

Plaintiffs claim that PyL PR "stakes its entire position . . . on bald assertions by its two principals" (Docket No. 113 at p. 13), and urge the Court to follow the lead of another court in this district that refused to credit the defendant's "barebones" affidavit regarding its nerve center.  See Santiago v. Baxter Healthcare S.A., No. 12-2019, 2013 WL 1352595, at *3 (D.P.R. Apr. 3, 2013) (Fuste, J.).  Because that decision considered the plaintiff's motion to remand, however, the defendant had the burden of demonstrating subject matter jurisdiction.  It was for that reason that the court rejected the defendant's barebones affidavit. Id.  Here, plaintiffs have the burden of establishing jurisdiction, and the Court accordingly need not rely upon any assertions from defendants, bareboned or otherwise. Despite not having the burden of doing so, PyL PR has offered "competent proof" in support of its

---

[2] A comparison of the email dates with the PyL PR's officer travel log (Docket No. 132-17) indicates that the emails were not sent while Messrs. Piñeyro and Lara were in Puerto Rico.

Civil No. 13-1917 (FAB) 9

contentions that its officers direct the company's activities from the Dominican Republic, which plaintiffs have not disproved.

    **C.    PyL PR's Operations**

To show that PyL PR's nerve center is in Puerto Rico, plaintiffs highlight the following connections between the company and Puerto Rico: (1) PyL PR's sales office, warehouse, customers, and employees are located in Puerto Rico; (2) PyL PR's sole bank account and credit line is with Banco Popular de Puerto Rico; and (3) PyL PR pays Puerto Rico taxes. (Docket No. 113.) Plaintiffs note as a point of contrast that PyL PR's principal place of business cannot be in the Dominican Republic because PyL PR has "never generated income, owned or leased any office space, or had any employees in the Dominican Republic." Id. at p. 5.

PyL PR contends, however, that its day-to-day operations take place in Puerto Rico, while its direction and control emanate from the Dominican Republic. Courts applying the Hertz nerve center test have distinguished between daily operations and corporate control. See, e.g., Hoschar v. Appalachian Power Co., 739 F.3d 163 (4th Cir. 2014) ("[T]he corporation's day-to-day operations are not relevant to the nerve center test under Hertz." (internal quotation marks and citation omitted)). In Central West Virginia Energy Co. v. Mountain State Carbon, LLC, the Fourth

Civil No. 13-1917 (FAB)                                                      10

Circuit Court of Appeals held that a corporation's nerve center was in Michigan, where seven of its eight corporate officers were located, despite the defendant corporation having shown "that its 'day-to-day operations,' including purchasing materials, selling products, managing environmental compliance, and administering human resources matters such as payroll, are conducted in Wheeling[, West Virginia]."  636 F.3d 101, 105 (4th Cir. 2011). Plaintiffs repeatedly point out that "PyL PR's operations (offices, employees, and government contacts), its finances (bank accounts and sources of capital), **and** the substantive trips of its officers" are based in Puerto Rico.  (Docket No. 113 at p. 14.)  The Court, like the Fourth Circuit Court of Appeals in Mountain State Carbon, however, fails to see "how any of this is relevant to the 'nerve center' test under Hertz."  Id. at 106.  Rather, the evidence before the Court indicates a scenario that "seem[s] to cut against the basic rationale for [diversity jurisdiction]," such as the example imagined by the Supreme Court: "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." Hertz, 559 U.S. at 96.  In this instance, the evidence suggests that Messrs. Piñeyro and Lara direct PyL PR's activities, "in this

Civil No. 13-1917 (FAB)                                                11
_____

era of telecommuting," see id. at 95, from Puerto Rico's island neighbor, the Dominican Republic.

The additional authority cited by plaintiffs does not convince the Court otherwise.  Plaintiffs cite the First Circuit Court of Appeals decision in Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57 (1st Cir. 1993), for the proposition that the location of PyL PR's bank accounts and employees is determinative.[3] That case is distinguishable from this one in several important respects.  There, in addition to finding that the defendant company's bank accounts, employees, and office were located in New York, the court of appeals found (1) that the company's Board of Directors meetings took place in New York, (2) that the corporate officers and directors all resided in New York, and (3) that "almost all of the corporations' decisions [were] made in New York."  Id. at 64 n.9.  Here, in contrast, while plaintiffs have shown that PyL PR's sales office, warehouse, employees, and bank account are located in Puerto Rico, they have not established that PyL PR's officers reside in Puerto Rico, that board meetings are held in Puerto Rico, or (most crucially) that the majority of the

_____

[3] Though Taber was decided before the Supreme Court's decision in Hertz, the decision's analysis is relevant to the extent that it applied the nerve center test.

Civil No. 13-1917 (FAB)                                                12

corporation's decisions are made in Puerto Rico.  The parties do not contest that PyL PR's two principal officers have never resided in Puerto Rico.  Piñeyro testified that PyL PR does not have a board of directors or hold regular meetings, and that he and Lara make all of PyL PR's "important decisions" in the Dominican Republic.  (Docket No. 113-2 at pp. 153, 224.)  PyL PR's sales manager in Puerto Rico, Gladyselle Martinez, confirmed this; she testified that she does not make "decisions aside from sales negotiations without consulting with [Piñeyro and Lara] over there" in the Dominican Republic through conference calls, Skype calls, or email.  (Docket No. 113-7 at pp. 19-21.)  PyL PR's warehouse manager, Victor Fermin, similarly testified that Messrs. Piñeyro and Lara's visits to the warehouse in Puerto Rico did not entail business decision-making.  (Docket No. 113-20 at p. 56.)  As a result of these key differences, plaintiffs' jurisdictional showing is much weaker than that found to be sufficient in Taber; the case accordingly does not dictate the outcome here.

Next, plaintiffs cite a decision from this district, which found that the defendant corporation's nerve center was where its corporate offices, mailing address, and the majority of its employees were located — in Puerto Rico.  Hernandez v. Amgen Mfg. Ltd., 979 F. Supp. 2d 239 (D.P.R. 2013) (Casellas, J.).  Plaintiffs

contend that "the same exact factors point (even more conclusively) to Puerto Rico as PyL PR's nerve center in this case." (Docket No. 113 at p. 14.)  Again, plaintiffs' argument ignores several important differences between this case and the Hernandez decision. In Hernandez, the plaintiff had confused the location of the defendant's parent corporation in California with the location of the defendant, and consequently had "[m]ade no developed argument" regarding the defendant's nerve center.  979 F. Supp. 2d at 245. The court rejected "Plaintiff's misguided approach of obfuscating" the defendant with its parent corporation, noting that "[n]o more is needed to conclude that Plaintiff falls short of shouldering its burden."  Id. at 244.  In concluding that the defendant's nerve center was located in Puerto Rico, the court noted — among other factors — that "the vast majority of [defendant's] corporate officers maintain their offices in Juncos, Puerto Rico."  Id. at 245.  The court's reasoning in Hernandez, while sound, does not control here, where plaintiffs have failed to establish that PyL PR's corporate officers are based in Puerto Rico, and where neither party has confused the location of PyL PR with its (non-existent) parent company.

Next, plaintiffs direct the Court to a New Jersey District Court decision that "rejected the vague declaration of the

defendant's president about this company's center of direction and control and, instead, found that the defendant company 'was created and formed specifically to address New Jersey's unique insurance market, and that [it] operates almost exclusively in [New Jersey.]'" (Docket No. 113 at p. 15 (quoting DeLuca v. Allstate N.J. Ins. Co., No. 11-4129, 2011 WL 3794229, at *5 (D.N.J. Aug. 25, 2011)).) "Substitute Puerto Rico for New Jersey," plaintiff claims, "and that quote describes PyL PR to a tee." Id. Again, plaintiffs overlook several key distinctions. In DeLuca, the company's president and CEO, controller, human resources department, and middle management employees were located in New Jersey. See 2011 WL 3794229, at *5. Here, in contrast, PyL PR's president and vice president, comptroller, and human resources department are all located in the Dominican Republic. (Docket Nos. 113-2 at pp. 21, 180-85; 113-20 at p. 70.) The two cases share one characteristic — both defendant corporations were formed to serve the markets of their states of incorporation. That consideration does not impact the Court's analysis of PyL PR's nerve center. See Hertz, 559 U.S. at 93 ("The public often (though not always) considers [the nerve center] the corporation's main place of business.").

Civil No. 13-1917 (FAB)                                               15

As further support for their position, plaintiffs note that in Hoschar v. Appalachian Power Co., the Fourth Circuit Court of Appeals found the defendant's principal place of business to be in Ohio despite its officers being based in West Virginia. 739 F.3d 163 (4th Cir. 2014). Plaintiffs misconstrue the facts in Hoschar. There, 22 of the company's 27 officers worked from Ohio, while only five officers worked from West Virginia. Id. at 172. The court found that the Ohio-based officers "make significant corporate decisions and set corporate policy such that they direct, control, and coordinate [defendant's] activities." Id. Similarly, here, defendants produced evidence that PyL PR's only two officers make significant corporate decisions from outside Puerto Rico.

In sum, although plaintiffs' evidence indicates that PyL PR's day-to-day operations are carried out in Puerto Rico, it does not satisfy plaintiffs' burden of showing that PyL PR's nerve center is located in Puerto Rico.

**IV. Conclusion**

The evidence proffered by plaintiffs indicates that "the bulk of [PyL PR's] business activities visible to the public take place in" Puerto Rico; but, plaintiffs have not shown that PyL PR's top officers direct those activities from Puerto Rico. See Hertz, 559 U.S. 96. Plaintiffs urge the Court to accept an approach

Civil No. 13-1917 (FAB)                                                  16

reminiscent of the complex "business activities" test explicitly rejected by the Supreme Court in Hertz.  See id.  The Supreme Court, acknowledging that hard cases would likely result, emphasized that the nerve center test "points courts in a single direction, towards the center of overall direction, control, and coordination." Id.  Here, the record evidence points the Court to Santo Domingo, Dominican Republic, as the place from which PyL PR's two principal officers direct, control, and coordinate the company's activities.  The Court thus finds that PyL PR's principal place of business is in the Dominican Republic, and that the parties are therefore not diverse pursuant to 28 U.S.C. § 1332(a)(3).  Accordingly, defendant's motion to dismiss the complaint (Docket No. 116) is **GRANTED**.  This case is **DISMISSED WITHOUT PREJUDICE**.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 3, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE